## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

| | | |
|---|---|---|
| **JENNIFER IHEAKANWA**, | * | |
| Plaintiff, | * | |
| v. | * | **Civil Action No. GLS 21-2930** |
| **SAKS FIFTH AVENUE, LLC**, | * | |
| Defendant. | * | |

\* \* \*

### MEMORANDUM OPINION

Pending before the Court is "Defendant Saks Fifth Avenue, LLC's Motion for Summary Judgment" and memorandum in support thereto (ECF Nos. 49, 49-1) (collectively "the Motion"), filed by Defendant Saks Fifth Avenue, LLC ("the Defendant"). Plaintiff Jennifer Iheakanwa filed her opposition related thereto ("Opposition"), and the Defendant filed its Reply. (ECF Nos. 50, 51). The matter is fully briefed, accordingly no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).

For the reasons set forth below, the Motion is **GRANTED**.

### I.   BACKGROUND

#### A.  Procedural Background

On November 15, 2021, Plaintiff Jennifer Iheakanwa ("Plaintiff") filed the Complaint against Defendant in this Court pursuant to 28 U.S.C. § 1332.  Initially, Plaintiff alleged the following: Count I: negligence; Count II: discrimination based on race; and Count III: defamation. (ECF No. 1).

On January 3, 2022, Defendant filed a "Notice of Intent to File a Motion to Dismiss Plaintiff's Complaint." (ECF No. 20). On January 10, 2022, Plaintiff filed a "Notice of Intent to File Amended Complaint" contemporaneously with her First Amended Complaint. The First Amended Complaint no longer contained a discrimination claim. Instead, Plaintiff alleged the following: Count I: negligence; Count II: defamation; and Count III: civil conspiracy. Plaintiff filed her response to Defendant's pleading the following day. (ECF Nos. 21-23).

On January 21, 2022, the Court held a Fed. R. Civ. P. 16 teleconference, wherein the Court: (1) granted Plaintiff's request to file her First Amended Complaint; (2) granted Plaintiff leave to file a Second Amended Complaint; and (3) set a letter briefing schedule for the parties to set forth their arguments regarding whether the Second Amended Complaint should be dismissed. (ECF Nos. 25, 26).

On March 14, 2022, Plaintiff filed her Second Amended Complaint, wherein she alleged the following: Count I: defamation; and Count II: civil conspiracy. (ECF No. 27, "Second Amended Complaint"). Thereafter, the Defendant filed its Letter Request to Dismiss the Second Amended Complaint. (ECF No. 28, "Request to Dismiss"). On August 30, 2022, after full briefing, the Court denied in part, granted in part Defendant's Request to Dismiss. (ECF Nos. 28-31). Specifically, the Court dismissed Count II of the Second Amended Complaint with prejudice. (ECF No. 32). Thus, only Plaintiff's defamation claim (Count I) remains.

Defendant filed its Answer to the Second Amended Complaint. (ECF No. 35). Thereafter, the Court resolved a discovery dispute upon reviewing letter briefing by the parties. (ECF Nos. 36-39).

On February 16, 2023, Defendant filed its Notice of Intent to file a motion for summary judgment, Plaintiff filed her response thereto on March 2, 2023, and on March 6, 2023, Defendant filed a letter seeking permission to file a reply. (ECF Nos. 43, 45-46).

Subsequently, the Court issued the letter order setting the summary judgment briefing schedule, with which the parties have fully complied. (ECF Nos. 47, 49-51). [1]

### B. Factual Background[2]

#### 1. Undisputed Facts

The following facts are undisputed. Plaintiff regularly shopped at a Saks Fifth Avenue store ("the Store"), which was located at 555 Wisconsin Avenue, Chevy Chase, Maryland. She had a personal shopper named Mekalia "Nono" Girma. (Deposition of Plaintiff, "Plaintiff Dep.," 15:3-21, J.A. 0005). On the morning of May 26, 2021, Plaintiff contacted Ms. Girma, who told her that she would not be working that day, so Plaintiff could communicate instead with Debra O'Malley, a Store cashier, about her shopping needs. (Plaintiff Dep. 16:2-9, J.A. 0005). Thereafter, Plaintiff and her mother entered the Store, where Ms. O'Malley assisted them. (Plaintiff Dep. 16:10-17, J.A. 0005). Plaintiff purchased $22,743.36 of in-store and online merchandise, $6,000 of which Plaintiff paid for in cash. (Plaintiff Dep. 66:16-19, J.A. 0018; Deposition of Debra O'Malley, "O'Malley Dep.," 36:7-38:5, J.A. 0047-48). Before Ms. O'Malley put the $6,000 cash in the register, she and another Store employee counted the cash twice in the presence of Plaintiff. (O'Malley Dep. 38:6-19, J.A. 0048; Plaintiff's Answer to Saks Fifth Avenue LLC's First Set of

---

[1] The parties submitted a Joint Appendix. (ECF No. 52) ("J.A."). Defendant's submissions can be found in this range: Bates Nos. 0001-0113. Plaintiff's submissions can be found in this range: Bates Nos. 0114-0136. The Court will refer to the documents as, e.g., J.A. 0001.

[2] The Court views all evidence in the light most favorable to Plaintiff, the nonmoving party. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

Interrogatories, "Plaintiff's Ans. to Interrog.," at No. 3, J.A. 0103). Ms. O'Malley then issued Plaintiff a receipt and Plaintiff went home. (O'Malley Dep. 73:1-4, J.A. 0056).

Later that afternoon, Store Manager Adrienne Kammler arrived at the register to perform a routine cash pick up. (Deposition of Adrienne Kammler, "Kammler Dep.," 21:1-21, J.A. 0065). By that time, Ms. O'Malley had only completed Plaintiff's transaction; in other words, she had not completed any other sales or cash transactions that day. (O'Malley Dep. 45:1-13, J.A. 0049). However, Ms. Kammler only counted $3,000 in the register. (Kammler Dep. 22:15-23:3, J.A. 0066). Unsure of how the $3,000 shortage occurred, Ms. O'Malley called Plaintiff, because she believed that the issue had to be related to Plaintiff's purchase. (O'Malley Dep. 47:1-17, J.A. 0050). Plaintiff did not answer Ms. O'Malley's call. (O'Malley Dep. 47:20-21, J.A. 0050). Ms. O'Malley then notified Ms. Girma, who informed Plaintiff of the cash shortage and advised Plaintiff to return Ms. O'Malley's call. (O'Malley Dep. 48:1-20, J.A. 0050). When Plaintiff spoke with Ms. O'Malley that evening, Ms. O'Malley insisted that Plaintiff return to the store to resolve the cash shortage. (Plaintiff Dep. 17:3-13, J.A. 0006). Ms. O'Malley did not ask Plaintiff to bring any merchandise or cash. (Plaintiff Dep. 17:14-22, J.A. 0006). Plaintiff reminded Ms. O'Malley that she counted the $6,000 cash twice in her presence. (Plaintiff's Ans. to Interrog. at No. 3, J.A. 0103). Ultimately, Plaintiff agreed to return to the store the following day. (Plaintiff Dep. 18:1-4, J.A. 0006). Plaintiff then told her brother, Michael Iheakanwa, about the situation and asked if he could accompany her to the Store. (Deposition of Michael Iheakanwa "M. Iheakanwa Dep.," 20:13-21:8, J.A. 0080-81).

The next day, Plaintiff met with Ms. O'Malley and Ms. Kammler on the first floor of the Store to discuss the cash shortage. (Plaintiff's Ans. to Interrog. at No. 3, J.A. 0103; O'Malley Dep. 55:1-14, J.A. 0052). Plaintiff arrived alone carrying $3,000 cash, and told her brother to meet her

at the Store. (Plaintiff Dep. 18:5-10, J.A. 0006; M. Iheakanwa Dep., 22:1-4, J.A. 0081). Plaintiff reminded Ms. Kammler that Ms. O'Malley counted the $6,000 twice. (Plaintiff's Ans. to Interrog. at No. 3, J.A. 0103). During her discussion with Ms. O'Malley and Ms. Kammler, Plaintiff demanded to see the video footage of her transaction because she believed it would prove that Plaintiff paid for her purchase and aid in determining how the shortage occurred. (Plaintiff's Ans. to Interrog. at No. 3, J.A. 0103; Plaintiff Dep. 47:5-7, J.A. 0013). However, Ms. Kammler did not play the video footage for Plaintiff. (Plaintiff Dep. 62:9-10, J.A. 0017). Ms. Kammler returned to her workstation on the third floor after it became clear that the three could not determine how the shortage occurred. (Kammler Dep. 43:17-45:15, J.A. 0071). Plaintiff maintained that she paid the full amount and Ms. O'Malley did not know why the register was short $3,000. (*Id.*).

Thereafter, Plaintiff requested to speak with Ms. Kammler again. (Plaintiff's Ans. to Interrog. at No. 3, J.A. 0103). Plaintiff told Mr. Iheakanwa to meet her on the third floor where she resumed her conversation with Ms. Kammler and Ms. O'Malley. (Plaintiff Dep. 22:19-23:7, J.A. 0007; Kammler Dep. 50:6-11, J.A. 0071). Mr. Iheakanwa, who was parked outside, then entered the Store. (M. Iheakanwa Dep. 23:11-22, J.A. 0081).  Mr. Iheakanwa observed the three women discussing the cash shortage as he shopped for items on the third floor. (M. Iheakanwa Dep. 25:2-27:3, J.A. 0082). Even though Plaintiff believed that she was not responsible for the cash shortage, she paid Ms. Kammler $3,000. (Plaintiff Dep. 29:4-6, J.A. 0007). Upon receiving the $3,000 cash, Kammler said, "It's good you paid this $3,000 because I would hate for you to suffer for this." (Plaintiff Dep. 22:8-13, J.A. 0007). Mr. Iheakanwa heard Ms. Kammler make this statement to Plaintiff. (M. Iheakanwa Dep. 29:11-22, J.A. 0083). Plaintiff found this comment offensive because she believed that Ms. Kammler was accusing her of not paying the $3,000. (Plaintiff's Ans. to Interrog. at No. 16, J.A. 0108).

Plaintiff left the Store embarrassed. (Plaintiff Dep. 36:2-11, J.A. 0010). Thereafter, Plaintiff called Ms. Girma to discuss the incident. (Girma Dep. 46:14-47:7, J.A. 0032). Plaintiff also reported the incident to the Store manager. (Text Messages with Emanuel Reyes-Falcon, Store Manager, J.A. 0123-36).

Plaintiff has never returned to the Store. (Plaintiff Dep. 51:20-52:2, J.A 0014). On August 14, 2021, Defendant retuned the additional $3,000 to Plaintiff. (Plaintiff's Ans. to Interrog. at No. 3, J.A. 0104).

The humiliation of the incident negatively impacted Plaintiff's work and personal life. (Plaintiff's Ans. to Interrog. at No. 11, J.A. 0106-07). For example, Plaintiff told her boss what happened at the Store because the emotional toll of the incident hindered her work productivity. (Plaintiff Dep. 29:4-30:2, J.A. 0009). Plaintiff's aunt backed out of a business venture upon learning of the incident from Plaintiff. (Plaintiff Dep. 27:2-28:8, J.A. 0008). In addition, Plaintiff told her landlord that her June rent payment would be late because she intended to pay her rent with the $3,000 cash she gave to Ms. Kammler. (Plaintiff Dep. 30:5-31:5, J.A. 0009). Plaintiff also discussed the incident with her friend and certified counselor, Virginia Attakumah. (Plaintiff Dep. 32:2-22, J.A. 0009; Affidavit of Virginia Attakumah, "Attakumah Affidavit," ¶¶ 7-23, J.A. 0116-17). Finally, Mr. Iheakanwa joked about the incident at a family cookout which led to family members constantly joking about whether Plaintiff stole or paid for the designer items she owned. (Plaintiff Dep. 66:1-15, J.A. 0018). However, Mr. Iheakanwa did not believe that Plaintiff stole from Defendant. (M. Iheakanwa Dep. 17:2-12, J.A. 0080).

*2. Disputed Facts*

The following facts are in dispute, many of which are not material to the Court's determination.[3] Per Plaintiff's version, the following are facts: first, Ms. Kammler demanded that she pay $3,000 when they were on the third floor (Plaintiff Dep. 20:1-8, J.A. 0006); second, Ms. Kammler's statements attracted the attention of nearby customers and Mr. Iheakanwa, all of whom heard Ms. Kammler say that Plaintiff purchased some items and failed to pay for some of those items, and "It's good you paid this $3,000, because I would hate for you to suffer because of this" (Plaintiff Dep. 22:4-13, J.A. 0007; M. Iheakanwa Dep. 29:18-22, J.A. 0083; Affidavit of Michael Iheakanwa, "M. Iheakanwa Affidavit," ¶¶ 16-23, J.A. 0115); third, Plaintiff and Mr. Iheakanwa interpreted "suffer" to mean that she would be charged with theft if she did not pay $3,000 (Plaintiff Dep. 44:11-21, J.A. 0012; M. Iheakanwa Affidavit, ¶¶ 21-22, J.A. 0115); fourth, Plaintiff sought clinical counselling from Ms. Attakumah due to the emotional distress caused by the incident (Attakumah Affidavit ¶ 4, J.A. 0116); fifth, that Plaintiff suffered compensable harm when her aunt backed out of a business venture with her upon learning of the incident (Plaintiff Dep. 37:18-41:6, J.A. 0011-12); sixth, Plaintiff contends that Ms. Girma was hesitant to associate with her after the incident (Plaintiff's Ans. to Interrog. at No. 11, J.A. 0106; Plaintiff Dep. 36:12-37:2, J.A. 0010-11); and seventh, Plaintiff believes that her reputation was tarnished because people were hesitant to associate with her as a result of the incident (Plaintiff's Ans. to Interrog. at No. 11, J.A. 0106-07).

Defendant offers a counternarrative. First, Ms. Kammler never demanded the $3,000 from Plaintiff (Kammler Dep. 47:1-3, J.A. 0072). Second, customers neither heard Ms. Kammler's statements nor intervened (Kammler Dep. 50:15-18, J.A. 0073). Third, Mr. Iheakanwa was not

---

[3] *See* Section III.C, *infra*, for the Court's analysis as to which facts are material. *See also Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) ("A fact is material if it might affect the outcome of the suit under the governing law.").

present when Ms. Kammler said that Plaintiff purchased some items and failed to pay for some of those items (M. Iheakanwa Dep. 25:4-29:22, J.A. 0082-83; Kammler Dep. 51:4-16, J.A. 0073). Fourth, that Ms. Kammler did not mean that Plaintiff would be charged with theft when she said "suffer," but rather Ms. Kammler was concerned that Plaintiff felt as if she did not owe Defendant $3,000 ("Kammler Written Statement," J.A. 100). Fifth, Plaintiff sought advice from Ms. Attakumah as a friend, not in her capacity as a clinical counsellor (Plaintiff Dep. 33:15-18, J.A. 0010). Sixth, Plaintiff's relationship with Ms. Girma did not change following the incident (Girma Dep. 52:3-20, J.A. 0033). Finally, any reputational or compensable harm Plaintiff may have suffered resulted from Plaintiff and Mr. Iheakanwa telling others about the incident, not from the Defendant's actions (Plaintiff Dep. 28:15-18, J.A. 0008; M. Iheakanwa Dep. 36:14-38:2, J.A. 0084-85).

## II.    STANDARD OF REVIEW

Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016).

The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (internal citation omitted). The burden can be satisfied through the submission of, e.g., pleadings, depositions, answers to interrogatories, admissions, and affidavits. *Celotex Corp.*, 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).

To defeat motions for summary judgment, on the other hand, the nonmoving party cannot simply cast "metaphysical doubt" on the material facts, but rather must provide specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing Fed. R. Civ. P. 56(e)); *see also Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("trial is unnecessary only if either the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question").

The Court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motions. *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255). A "mere scintilla" of evidence is insufficient to create an issue of material fact. *See Barwick*, 736 F.2d at 958–59 (citing *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966)). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.    DISCUSSION

### A.  General Summary of Parties' Arguments

Defendant asserts that it is entitled to summary judgment, as a matter of law, because Plaintiff has failed to establish a *prima facie* claim of defamation. Specifically, Defendant argues that: (1) Plaintiff failed to put forth any evidence establishing that there was an unidentified, intervening customer who understood Ms. Kammler's statement that Plaintiff purchased some items and failed to pay for some of those items ("Statement 1") to be defamatory; (2) Plaintiff failed to meet her burden that Ms. Kammler's statement "It's good you paid this $3,000, because I would hate for you to suffer because of this" ("Statement 2") was defamatory, because the only third party who heard the statement was Mr. Iheakanwa, who did not believe that Plaintiff stole

from Defendant; (3) Plaintiff failed to establish the falsity of Statement 2; i.e., the statement was true; (4) Plaintiff failed to show that Ms. Kammler acted with actual malice when she said "suffer;'" and (5) Plaintiff failed to prove damages and reputational harm because Mr. Iheakanwa's opinion of Plaintiff did not change following the incident. Finally, Defendant argues that if Plaintiff suffered any harm, it was the result of Plaintiff and Mr. Iheakanwa telling others about the incident, and not due to the Defendant's actions. (Motion, pp. 9-19).

In response, Plaintiff argues that she met her burden of proof for the following reasons: (1) Mr. Iheakanwa was present when Ms. Kammler made Statement 1 and recognized it to be defamatory; (2) Mr. Iheakanwa heard Statement 2, and he interpreted the word "suffer" to mean that Plaintiff would risk charges of theft; (3) Statement 2 was false because Plaintiff paid the $3,000 that Ms. Kammler accused her of not paying; (4) Ms. Kammler acted with actual malice by failing to review the video footage and accusing Plaintiff of not paying when Ms. O'Malley counted the cash twice and issued Plaintiff a receipt; and (5) Plaintiff suffered reputational harm and compensable damages because family and friends stopped associating with her after the incident. (Opposition, pp. 8-24).

In the Reply, Defendant maintains that Plaintiff has failed to meet her burden of producing evidence to establish a *prima facie* claim of defamation and urges the Court to disregard Mr. Iheakanwa and Ms. Attakumah's affidavits. (Reply, pp. 4-17). Specifically, Defendant argues that Mr. Iheakanwa and Ms. Attakumah's affidavits contradict Mr. Iheakanwa's sworn deposition testimony and Plaintiff's sworn deposition testimony, respectively. (*Id.*, pp. 13-17). Finally, Defendant avers that Ms. Attakumah's affidavit is "ripe with hearsay and double hearsay." (*Id.*, p. 16).

The Court will address each argument in turn.

10

### B.  The Law on Defamation

Establishing a *prima facie* case of defamation in Maryland, requires proof of four elements: (1) the defendant made a defamatory statement to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm. *Offen v. Brenner*, 402 Md. 191, 198, 935 A.2d 719 (2007) (citing *Smith v. Danielczyk*, 400 Md. 98, 115, 928 A.2d 795, 805 (2007)).

Under the first element, a defamatory statement "'tends to expose a person to public scorn, hatred, contempt[,] or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person.'" *Norman v. Borison*, 418 Md. 630, 645, 17 A.3d 697, 705 n.10 (2011) (quoting *Offen*, 402 Md. at 198-99, 935 A.2d at 723-24).

In addition, there are two types of defamatory statements: *per se* and *per quod*. *Metromedia, Inc. v. Hillman*, 285 Md. 161, 172–73, 400 A.2d at 1123 (1979). In general, a statement is defamatory *per se* when the hearer can "impute the defamatory character" from the words themselves and no further inference or context is necessary. *Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 429, 966 A.2d 432, 441 (2009) (quoting *Metromedia*, 285 Md. at 172-73, 400 A.2d at 1123); *see also Shulman v. Rosenberg*, Case No. 24-C-16-001867, 2017 WL 5172642, at *9 (Md. Ct. Spec. App. Nov. 8, 2017). In such a case, the injurious nature of the words is a "self-evident fact of common knowledge of which the court takes judicial notice," such that it does not need to be "pleaded or proved." *M & S Furniture Sales Co. v. Edward J. De Bartolo Corp.*, 249 Md. 540, 544, 241 A.2d 126, 128 (1968). By contrast, defamation *per quod* requires the plaintiff to allege "extrinsic facts" that establish the defamatory character of the words through context or innuendo. *Metromedia*, 285 Md. at 171, 400 A.2d at 1123. Whether a statement is defamatory *per se* or *per quod* is a question of law. *Shapiro v. Massengill*, 105 Md. App. 743, 661 A.2d 202, 217

(1995); *see also Clayton v. Fairnak*, Civ. No. JKB-18-2134, 2018 WL 6446440, at \*2 (D. Md. Dec. 10, 2018).

As a preliminary matter, when resolving the Request to Dismiss, the Court found that Ms. Kammler's statements could only qualify as defamatory *per quod* because the vagueness of the statements could also give rise to a non-defamatory meaning. Therefore, the Court held that additional facts were necessary to understand what Ms. Kammler meant when she said that Plaintiff did not make the full payment and that she did not want Plaintiff to "suffer" to determine whether the meanings were defamatory. (ECF No. 31). Thus, whether the statements are defamatory *per quod* still remains the issue at the summary judgment stage.

Under the second element, a statement is "false" if it was "not substantially correct." *Piscatelli v. Van Smith*, 424 Md. 294, 35 A.3d 1140, 1147 (2012). The plaintiff bears the burden of establishing falsity. *Batson v. Shiflett*, 325 Md. 684, 726, 602 A.2d 1191, 1213 (1992). *Lewis-Davis v. Bd. of Educ. of Baltimore Cnty.*, Civ. No. ELH-20-0423, 2021 WL 4772918, at \*22 (D. Md. Oct. 13, 2021)

Under the third element, fault may be based on negligence or constitutional malice, sometimes referred to as "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Batson*, 325 Md. at 711, 602 A.2d at 1210. Actual malice requires that the defendant made the statement "with actual knowledge" that the statement is false, "coupled with [his or her] intent to deceive another by means of that statement." *Piscatelli*, 424 Md. at 307-08, 35 A.3d at 1148 (quoting *Ellerin v. Fairfax Sav. F.S.B.*, 337 Md. 216, 240, 652 A.2d 1117, 1129 (1995)) (internal quotation marks omitted). Negligence requires that the defendant failed to "act as a reasonable person under the circumstances." *Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725, 731 (D. Md. 2009).

Under the fourth element, "[t]he standard for establishing harm is different depending on whether the statement was defamatory *per se* or defamatory *per quod*." *Rorie v. Bd. of Educ. of Charles Cnty.,* 653 F. Supp. 3d 217, 242 (D. Md. 2023). Harm is presumed if the statement is defamatory *per se*. In contrast, if the statement is defamatory *per quod*, the plaintiff must prove that "the words caused actual damages." *Id.* (citing *Metromedia*, 400 A.2d at 1123 (Md. 1979); *Samuels v. Tschechtelin*, 135 Md. App. 483, 763 A.2d 209, 245 (2000); *Gooch v. Md. Mech. Sys., Inc.*, 81 Md.App. 376, 567 A.2d 954, 961-62 (1990).

Actual damages may include economic loss, as well as "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Clayton v. Fairnak*, Civ. No. JKB-18-2134, 2018 WL 6446440, at *4 (D. Md. Dec. 10, 2018) (quoting *Jacron Sales Co. v. Sindorf*, 276 Md. 580, 350 A.2d 688, 692 (Md. 1976)); *see also Hunt v. Mercy Med. Ctr.*, 121 Md. App. 516, 531 (1998).

### C.  Analysis of Statements 1 and 2

As a preliminary matter, the evidence in the record before the Court neither identifies the so-called intervening customer, nor does it contain facts establishing that the intervening customer understood Ms. Kammler's statements to be defamatory. Moreover, at this procedural juncture, Plaintiff has abandoned her initial argument that customers overheard Statements 1 and 2 and understood them to be defamatory. Instead, Plaintiff now asserts that her brother overheard Statements 1 and 2 and understood them to be defamatory. *See* Opposition, pp. 6-9. Thus, even though the parties dispute whether customers heard Ms. Kammler's statements, this fact does not affect the outcome of Plaintiff's defamation claim without any evidence of how the customers interpreted Ms. Kammler's statements. Put another way, this disputed fact is not material. *See*

*Jones, supra,* 820 F.3d at  691 ("A fact is material if it might affect the outcome of the suit under the governing law").

### 1.  Statement 1

The Court will now address Statement 1, i.e., Ms. Kammler's statement that Plaintiff purchased some items and failed to pay for some of those items.

Defendant argues that it is entitled to summary judgment because Plaintiff failed to set forth any evidence to demonstrate that a third party heard Statement 1 and understood it to have a defamatory meaning. In particular, Defendant urges the Court to disregard Mr. Iheakanwa and Ms. Attakumah's affidavits, because the former is contradictory and unreliable, and the latter would not be admissible at trial because it is hearsay.

### a. Mr. Iheakanwa

Plaintiff now argues that Mr. Iheakanwa is a third party who heard Statement 1 and recognized it to be defamatory. To advance this argument, Plaintiff relies on: (a) Mr. Iheakanwa's sworn deposition testimony and subsequent affidavit; and (b) Ms. Girma's deposition testimony, which allegedly corroborates Mr. Iheakanwa's testimony that he heard Statement 1 and recognized it to be defamatory. Plaintiff also avers that Ms. Attakumah's affidavit constitutes further evidence that Ms. Kammler made a defamatory statement. (Opposition pp. 7-8).

Construing the facts in the Plaintiff's favor, on January 17, 2023 Mr. Iheakanwa was deposed and testified that he was shopping on the first floor and initially could not hear the conversation between Plaintiff, Ms. Kammler, and Ms. O'Malley. (M. Iheakanwa Dep. 25:1-4, J.A. 0082)("So when I first walked up there, I saw that [Plaintiff] was there with some people. I didn't want to just impose … so I just like, you know, casually, you know, walked around … to see what I could possibly, you know, buy for myself if it came to that"). He continued: "Well, it

looked like a discussion. Again, at that point I couldn't hear what was going on. It just looked like a discussion was going on."( M. Iheakanwa Dep. 27:1-4, J.A. 0082). When asked about the specific statements he heard when he approached Plaintiff, Ms. Kammler, and Ms. O'Malley, Mr. Iheakanwa testified:

> [S]o as I'm approaching, I see [Plaintiff], like she had a wad of cash with her, and, like, she placed it on the table, but as I got closer was when [Ms. Kammler], she took … the money, and … she initially said, thank you, I, I'm glad you, you brought the money, I would have hate to see you suffer, something along those lines to [Plaintiff].

(M. Iheakanwa Dep. 27:1-4, J.A. 0082). In other words, the Court finds that Mr. Iheakanwa did not testify in his deposition that he heard Statement 1.

However, in his affidavit, which the Court reasonably infers from the evidence was most likely executed after he was deposed, Mr. Iheakanwa contradicts his sworn testimony. Specifically, he avers that he heard Ms. Kammler make Statement 1: "[I] heard the manager telling the third lady that intervened that [Plaintiff] had made some purchases but failed to pay for some of the items." (M. Iheakanwa Affidavit, ¶ 17, J.A. 0115).

Faced with this contradictory evidence, Plaintiff argues that there is a genuine issue of material fact because Mr. Iheakanwa's affidavit demonstrates that he heard Ms. Kammler make Statement 1, even though his prior deposition testimony demonstrates that Mr. Iheakanwa was shopping on the third floor and could not hear the discussion when Ms. Kammler made Statement 1. However, in this Circuit, a party "cannot create a dispute about a fact that is contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for 'it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct.'" *In re Fam. Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011) (quoting

*Erwin v. United States,* 591 F.3d 313, 325 n. 7 (4th Cir. 2010); *see also Barwick*, 736 F.2d at 960. ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct"). Accordingly, to the extent that Mr. Iheakanwa's testimony and affidavit are inconsistent, the Court will rely on his deposition testimony. *See In re Fam. Dollar FLSA Litig.*, 637 F.3d at 513 (In a summary judgment context, when a person's deposition testimony and a later-executed affidavit are inconsistent, the court will disregard the person's affidavit and rely on the testimony given in the earlier deposition, where deponent was examined at length).

Plaintiff further argues that summary judgment is inappropriate because courts have held that a *prima facie* case of defamation can involve statements made in the presence of a family member. (Opposition, p. 7). To advance this argument, Plaintiff relies on the following caselaw: *Linck v. Driscoll*, 13 Ind. App. 279, 41 N.E. 463 (1895), *Emo v. Milbank Mut. Ins. Co.*, 183 N.W.2d 508 (N.D. 1971), and *Bonkowski v. Arlan's Dep't Store*, 12 Mich. App. 88, 162 N.W.2d 347 (1968), *rev'd on other grounds,* 174 N.W.2d 765 (1970).

The Court finds that Plaintiff's reliance on *Linck*, *Emo*, and *Bonkowski* is misplaced. In *Linck*, *Bonkowski*, and *Emo* the defamatory statement was made to—or in the presence of—a family member. *See Linck*, 13 Ind. App. 279, 41 N.E. 463, 463 ("defamatory language spoken of and to the wife in the presence of the husband"); *Bonkowski*, 12 Mich. App. at 100 (defamatory statement made in the presence of plaintiff's husband); *Emo*, 183 N.W.2d at 511 (defamatory statement in policy cancelation letter addressed to plaintiff's wife). However, as held above, the Court may only consider Mr. Iheakanwa's deposition testimony, which reflects that he was not present when Statement 1 was made. Thus, *Linck, Emo,* and *Bonkowski* are readily distinguishable from the instant case.

16

In sum, in light of the relevant case law, when construing the facts in the light most favorable to Plaintiff, the Court finds that no reasonable fact finder could conclude that Plaintiff has offered facts establishing that a family member was present when Ms. Kammler made Statement 1.

        b. <u>Ms. Girma and Ms. Attakumah</u>

Plaintiff also asserts that Ms. Girma's testimony corroborates Mr. Iheakanwa's affidavit that he heard Statement 1 and recognized it to be defamatory.  (Opposition, p. 8).  As held above in Section III.C.1.a., *supra*, the Court may only consider Mr. Iheakanwa's deposition testimony as it relates to Statement 1. Irrespective of whether the Court relies on Mr. Iheakanwa's deposition testimony, even when the Court views the facts in the light most favorable to the Plaintiff, there is no evidence put before the Court that Ms. Girma was in the Store when the incident occurred; instead, she testified that she learned of the incident over the phone. *See* Girma Dep. 46:14-47:7, J.A. 0032.

Fed. R. Civ. P. 56(c)(2) makes clear that evidence supporting the facts set forth by a plaintiff to defeat a summary judgment challenge must be admissible at trial. Fed. R. Evid. 802 prohibits the use of hearsay evidence at trial. Fed. R. Evid. 801(c) defines hearsay as a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers to prove the truth of the matter asserted in the statement. Thus, Ms. Girma's testimony constitutes hearsay.

Similarly, the Court finds Plaintiff's reliance on Ms. Attakumah's affidavit to demonstrate that Statement 1 is defamatory to be misplaced. Viewing the only evidence put before the Court, Ms. Attakumah was not at the Store when Ms. Kammler made Statement 1. Rather, Ms. Attakumah learned of the incident afterwards, when Plaintiff called her on June 11, 2021. (Attakumah

Affidavit ¶¶ 7-23, J.A. 0116-17). Thus, Ms. Attakumah's testimony is inadmissible hearsay. Accordingly, Plaintiff failed to offer admissible evidence that a third party heard Statement 1 and found it to be defamatory to demonstrate a genuine issue of material fact. *See In re Fam. Dollar FLSA Litig.*, 637 F.3d at 513.

In sum, the Court must consider Mr. Iheakanwa's deposition testimony as it relates to Statement 1, and finds that Ms. Girma and Ms. Attakumah's affidavits are inadmissible. Thus, construing the evidence in the light most favorable to Plaintiff, there is no admissible evidence to support that Mr. Iheakanwa heard Statement 1. Because Plaintiff failed to produce admissible evidence from which a reasonable jury could find that a third party heard the statement and found it to be defamatory, Defendant is entitled to summary judgment with respect to Statement 1.

     *2.   Statement 2*

The Court now turns to Statement 2, Ms. Kammler's statement that "It's good you paid this $3,000, because I would hate for you to suffer because of this." It is undisputed that Mr. Iheakanwa was present when Ms. Kammler made Statement 2. Thus, the question before the Court is whether, when viewing the facts in the light most favorable to the Plaintiff, a reasonable factfinder could conclude that Mr. Iheakanwa understood the statement to be defamatory.

Defendant argues that it is entitled to summary judgement because Mr. Iheakanwa's deposition testimony establishes that he did not believe Plaintiff stole from Defendant and his opinion of Plaintiff did not change after he heard Statement 2. (Motion, pp. 9-12). Defendant also urges the Court to disregard Mr. Iheakanwa's affidavit, arguing that it is contradictory to his previous deposition testimony. (Reply, pp. 14-16). Thus, Plaintiff has failed to produce evidence to establish that Statement 2 was defamatory. (Motion, pp. 9-12).

Plaintiff counters that Mr. Iheakanwa's deposition and affidavit demonstrate that Statement 2 was defamatory because Mr. Iheakanwa interpreted Statement 2 to signify that Ms. Kammler would call the police on Plaintiff for stealing $3,000 from Defendant. (Opposition, pp. 8-11).

In their pleadings, both parties rely on *Bonkowski, supra*, a Michigan case that the Supreme Court of Maryland has recognized as "consistent with well settled" Maryland law. *See Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 261 A.2d 731 (1970). As set forth earlier in Section III.B, *supra*, an essential element of defamation under Maryland law requires that the defamatory statement discourages others in the community from having a good opinion of that person. *See Norman*, *supra*, 418 Md. at 645.

The Court finds *Bonkowski* instructive. In *Bonkowski*, a security officer called the plaintiff back to the store because he believed she took jewelry without paying for it. There, the plaintiff explained that she paid for the jewelry; however, she ultimately emptied the contents of her purse as the security officer demanded. The plaintiff's husband, who was present at the store, testified that he knew his wife did not steal the jewelry, and he watched plaintiff produce the receipts that confirmed that she did not steal from the defendant. The *Bonkowski* court held that the security officer's demand that plaintiff empty her purse could give rise to a defamation claim. However, the court held that the husband did not understand the statement to be defamatory because he knew his wife did not steal. Thus, the court ultimately held that the facts were insufficient to prove defamation because plaintiff's reputation was not "damaged in the eyes of her husband." 12 Mich. App. at 93-101.

In the instant case, the evidence before the Court reflects that Ms. O'Malley asked Plaintiff to return to the Store to resolve the cash shortage she suspected occurred during Plaintiff's purchase. (O'Malley Dep. 47:1-17, J.A. 0050). Plaintiff returned to the Store and stated that Ms.

O'Malley counted the $6,000 cash twice in her presence and issued her a receipt. (Plaintiff's Ans. to Interrog. At No. 3, J.A. 0103). As Mr. Iheakanwa approached Plaintiff, Ms. Kammler, and Ms. O'Malley, he heard Ms. Kammler make Statement 2. (M. Iheakanwa Dep. 29:11-22, J.A. 0083). However, Mr. Iheakanwa testified that he did not believe Plaintiff stole from Defendant. (M. Iheakanwa Dep. 17:8-11, J.A. 0080) ("the way that [Ms. Kammler] was yelling at [Plaintiff] in the situation, I didn't know what was going on, but deep down inside I knew [Plaintiff] didn't steal from [Defendant]"). In addition, Mr. Iheakanwa testified that following the incident, his opinion of Plaintiff did not change; rather, he continued to "trust [Plaintiff] with everything, and … think she's a very great person." (M. Iheakanwa Dep. 18:10-11 J.A. 0080).

Construing the facts in the light most favorable to the Plaintiff, no reasonable fact finder could conclude that Plaintiff has offered facts establishing that Mr. Iheakanwa believed that she stole from Defendant, such that his opinion of her changed. Accordingly, there is no genuine issue of material fact as to whether her reputation was damaged in the eyes of Mr. Iheakanwa. *See Norman*, *supra,* 418 Md. at 645. Moreover, the Court finds unavailing Plaintiff's argument that the law does not require her to prove that Mr. Iheakanwa's opinion of Plaintiff changed to survive summary judgment.

The Court need not address Defendant's argument that Mr. Iheakanwa's affidavit contradicts his deposition testimony on the issue of whether Ms. Kammler would call the police, as Plaintiff has failed to prove that Mr. Iheakanwa's opinion of her changed. The Court finds this fact immaterial. Put another way, the outcome of Plaintiff's defamation claim turns on whether Mr. Iheakanwa's opinion of Plaintiff changed, not whether he thought Ms. Kammler would call the police on Plaintiff. *See Bonkowski*, *supra*, 12 Mich. App. at 93; *see also Norman*, *supra*, 418 Md. at 645.

In sum, there is no evidence from which a reasonable factfinder could conclude that either Statement 1 or Statement 2 was a defamatory statement made to a third person. Thus, Plaintiff has failed to meet her burden on an essential element of a defamation claim. Accordingly, the Motion is hereby granted.

### 3. *Damages*

The Court has held that Defendant is entitled to judgment as a matter of law because Plaintiff cannot establish an essential element of a defamation claim. Thus, this Court is not required to address the merits of Defendant's substantive arguments on the remaining issues. However, the Court held in Section III.B, *supra*, that Ms. Kammler's statement, if defamatory, would be defamatory *pro quod*, because the word "suffer" could have a defamatory or non-defamatory meaning. Thus, assuming that Plaintiff had somehow survived summary judgment on the first element of defamation, as well as met her burden on the second and third elements of defamation, the question before the Court would be whether construing the facts in the light most favorable to Plaintiff, there is evidence from which a factfinder could reasonably conclude that she has met her burden on establishing the fourth element of defamation: damages.

Defendant argues that it is entitled to summary judgment on the issue of damages because: (1) Plaintiff failed to produce objective evidence of emotional distress; (2) Plaintiff's relationship with Ms. Girma did not change due to the Statement; (3) Plaintiff failed to offer any evidence that Statement 2 caused her aunt to back out of a business venture; and (4) to the extent that Plaintiff suffered damages, it was the direct result of her and Mr. Iheakanwa's publications.

Plaintiff argues that the evidence supports that she suffered compensable and reputational harm. (Opposition, pp. 17-24). To advance this argument, Plaintiff avers the following: (1) Plaintiff sought counselling due to emotional distress caused by the incident; (2) Plaintiff's

relationship with Ms. Girma changed after the incident; (3) Plaintiff's aunt withdrew from a business venture with Plaintiff because of the incident; (4) Plaintiff's job performance declined after the incident; and (5) Plaintiff suffered reputational harm as a result of the incident. (*Id.*).

To support its arguments, Defendant relies on *Rorie, supra,* 653 F. Supp. 3d 217 and *Hunt v. Mercy Med. Ctr.*, 710 A.2d 362 (Md. Spec. App. 1998), both of which the Court finds instructive.

In *Rorie*, the plaintiff was demoted from principal to vice principal after an investigation by the school board into her handling of an incident between students on the playground. Thereafter, the defendants (who were the county board of education, school district, superintendent, and deputy superintendent) published a statement that "the individuals involved in making that decision are being retrained in the proper procedures and responses," which plaintiff alleged referred to her and was "career ending" and defamatory. The court found that "the statements about retraining were defamatory *per quod* because their defamatory nature [arose] only in the context of the overall playground incident and depend[ed] on the implication that if [plaintiff] require[d] retraining, she must have failed at her job or engaged in misconduct." 653 F. Supp. 3d at 242. However, the court ultimately granted summary judgment in favor of defendants because plaintiff did not provide evidence of actual damages. Specifically, the court found that plaintiff and her publicist repeated the defamatory statements to plaintiff's prospective employers such that the employer's decisions were influenced by plaintiff's statements, rather than by the so-called defamatory statements made by the defendants. Thus, the court held that the plaintiff did "not present[] sufficient evidence to show that the alleged defamatory statements caused the actual damages [that she claimed.]" 653 F. Supp. 3d at 228-242.

The same is true in this case. The evidence in the record reflects that Plaintiff repeated Statement 2 to Ms. Attakumah, her aunt, her boss, and Ms. Girma (Plaintiff Dep. 32:2-22, J.A. 0009; Plaintiff Dep. 27:2-28:8, J.A. 0008; Plaintiff Dep. 29:4-30:2, J.A. 0009; Plaintiff Dep. 30:5-31:5, J.A. 0009; Plaintiff Dep. 66:1-15, J.A. 0018; Girma Dep. 46:14-47:7, J.A. 0032). In addition, Mr. Iheakanwa repeated Statement 2 when he joked about the incident to family and friends (M. Iheakanwa Dep. 36:12-39:5, J.A. 0084-85). Although Plaintiff argues that her reputation was tarnished because people no longer wanted to associate with her, the record demonstrates that her friends and family only learned of the incident from Plaintiff and Mr. Iheakanwa. Thus, even when construing the evidence in Plaintiff's favor, Plaintiff failed to put forth evidence from which a jury could conclude that Defendant caused her harm resulting in damages to support a claim of defamation *pro quod*. *See Rorie*, *supra*, 653 F. Supp. 3d at 242.

Finally, the Court addresses Plaintiff's emotional distress claim.

Defendant advances the following arguments: (1) that the Court should disregard Ms. Attakumah's affidavit because it directly contradicts Plaintiff's deposition testimony that she sought advice from Ms. Attakumah as a friend; (2) Plaintiff has failed to demonstrate emotional distress capable of objective determination; and (3) if Plaintiff suffered any harm, it was caused by her and Mr. Iheakanwa repeating Ms. Kammler's statements. (Reply, pp. 10, 16-18). Plaintiff counters that she sought advice from Ms. Attakumah in her capacity as a certified counselor as evidence of her emotional distress.  (Opposition, p. 17).

Upon examining the record and construing the facts in the light most favorable to Plaintiff, there is a dispute as to whether Plaintiff sought advice from Ms. Attakumah in her capacity as a clinical counselor or merely as a friend. Specifically, Plaintiff testified during her deposition that the only counseling she sought was through Ms. Attakumah, but "it was through a friend, a friend

environment, friendly environment." (Plaintiff Dep. 34:10-13, J.A. 0009-10). And when asked whether Ms. Attakumah observed, treated, or examined her in her capacity as a certified counselor, Plaintiff testified, "Oh no; just as a friend, as a friend." (Plaintiff Dep. 32:15-21, J.A. 0010). However, Ms. Attakumah's affidavit offers a counternarrative, namely that Plaintiff sought her professional advice regarding the incident that occurred at the Store. *See* Attakumah Affidavit ¶ 4 J.A. 0116.

Although the record demonstrates a dispute of fact as it relates to Plaintiff's emotional distress claim, this fact is not material. In other words, the outcome of Plaintiff's defamation claim does not turn on whether Plaintiff sought clinical advice from Ms. Attakumah because Plaintiff has otherwise failed to put forth evidence from which a jury could conclude that Defendant caused her harm. *See Mitchell*, *supra*, 12 F.3d at 1315-16 ("trial is unnecessary only if either the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question.").

Accordingly, the Motion is also granted on the issue of damages.

## IV.    CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. The Clerk of the Court shall enter judgment in favor of the Defendant. The Clerk of the Court is further directed to **CLOSE** this case.

A separate Order will follow.


Dated:  March 25, 2024

                            _____/s/_____
                            The Honorable Gina L. Simms
                            United States Magistrate Judge